UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHELDON HOYT, ET AL.,                )
                                     )
            Plaintiffs,              )
                                     )        CIVIL ACTION NO.
VS.                                  )
                                     )        3:15-CV-3693-G
SAXON MORTGAGE SERVICES, INC.,       )
ET AL.,                              )
                                     )
            Defendants.              )

**MEMORANDUM OPINION AND ORDER**

Before the court are (1) the motion to dismiss of the defendants Ocwen Loan

Servicing, LLC ("Ocwen") and U.S. Bank National Association, as Trustee for Asset-

Backed Securities Corporation Home Equity Loan Trust 2004-HE9, Asset-Backed

Pass-Through Certificates, Series 2004-HE9 ("U.S. Bank") (docket entry 31) and

(2) the motion to dismiss of the defendant Saxon Mortgage Services, Inc. ("Saxon")

(docket entry 20).  For the reasons stated below, Ocwen's and U.S. Bank's motion to

dismiss is granted, and Saxon's motion to dismiss is granted in part and denied in

part.

I. <u>BACKGROUND</u>

A. <u>Factual Background</u>

In September 2004, Sheldon Hoyt and Linda Lyons ("the plaintiffs") executed a home equity note and signed a deed of trust for their home in Dallas, Texas. Plaintiffs' Second Amended Complaint ("Second Amended Complaint") ¶ 7 (docket entry 30). In 2010, the plaintiffs began working with Saxon, a loan servicer, to formulate a repayment plan to bring the plaintiffs' loan current. Second Amended Complaint ¶ 8. Saxon reduced the terms of the repayment plan to writing in the formal repayment plan agreement ("the formal repayment plan"). *See* Exhibit B to Second Amended Complaint ("Exhibit B") (docket entry 30-2). The formal repayment plan provides that the plaintiffs will pay $8,987.00 for the first month and $2,398.01 per month for the following 9 months. Second Amended Complaint ¶ 9. Before the repayment plan, the plaintiffs made payments of $2,251.86 per month towards their mortgage. *Id.* ¶ 9.

On January 3, 2011, Saxon sent the formal repayment plan to the plaintiffs to be executed and signed (docket entry 30-3). On January 6, 2011, the plaintiffs returned the signed and executed formal repayment plan (docket entry 30-7). However, the formal repayment plan stipulated that the plaintiffs needed to sign, execute, and return it by January 3, 2011. Exhibit B ¶ 10. Because the plaintiffs returned the formal repayment plan after January 3, 2011, Saxon contends that the

formal repayment plan never went into effect.  Saxon's Brief in Support of Its Motion to Dismiss the Plaintiffs' First Amended Complaint ("Saxon's Brief") at 4 (docket entry 21).  The plaintiffs, on the other hand, maintain that since they made all ten payments and Saxon accepted all of the payments, the formal repayment plan was a valid contract.  *See* Second Amended Complaint ¶ 12.

In November 2011, after the plaintiffs made all ten payments under the formal repayment plan, they contacted Saxon regarding the amount due for the next monthly mortgage loan payment and Saxon informed the plaintiffs that their home had been in foreclosure since August 2011.  *Id.* ¶ 14.  Later that month on November 16, 2011, the plaintiffs received a mortgage statement showing that the plaintiffs owed:  mortgage amount $1,904.80; escrow amount $527.97; delinquent payment $7,297.71; unpaid late charge $947.80; and suspense ($341.70).  *Id.* ¶ 15. The plaintiffs believed that the loan should have been brought current after they had completed all ten payments under the formal repayment plan, but the mortgage statement indicated that the loan was never brought current.  *Id.* ¶ 17.  The plaintiffs then worked with mortgage consultants to resolve the issue, *id.* ¶ 20, and at some later point Ocwen began servicing the loan.  *Id.* ¶ 21.

In 2015, the plaintiffs applied for a loan modification with Ocwen.  *Id.* ¶ 22. On May 19, 2015, however, while the application was still pending, U.S. Bank filed a

suit in the 162nd Judicial District Court of Dallas County, Texas requesting a home foreclosure.  *Id.* ¶¶ 22-23.

## B.  Procedural Background

On November 9, 2015, the plaintiffs filed this suit in the 191st Judicial District Court of Dallas County, Texas.  Notice of Removal ¶ 1 (docket entry 1).  On November 17, 2015, Ocwen and U.S. Bank removed the case to this court.  *Id.* Ocwen and U.S. Bank then filed a joint motion to dismiss pursuant to Rule 12(b)(6) on November 23, 2015.  *See generally* Ocwen's and U.S. Bank's Motion to Dismiss the Plaintiffs' Complaint (docket entry 6).  Saxon filed its motion to dismiss pursuant to Rule 12(b)(6) on December 7, 2015.  *See generally* Saxon's Motion to Dismiss the Plaintiffs' Complaint (docket entry 11).

The plaintiffs filed their first amended complaint on December 14, 2015.  *See generally* Plaintiffs' First Amended Complaint (docket entry 14).  Following the plaintiffs' first amended complaint, Ocwen filed its answer to the plaintiffs' first amended complaint on December 21, 2015 (docket entry 16), and U.S. Bank filed a second motion to dismiss on December 22, 2015 (docket entry 17).  On December 30, 2015, Saxon filed a motion to dismiss the plaintiffs' first amended complaint (docket entry 20).

On January 13, 2016, this court denied as moot Ocwen's and U.S. Bank's motion to dismiss the plaintiffs' original complaint (docket entry 23) and Saxon's motion to dismiss the plaintiffs' original complaint (docket entry 24).

The plaintiffs filed a motion for leave to file a second amended complaint on January 25, 2016 (docket entry 27). The court granted the plaintiffs' motion for leave and denied as moot U.S. Bank's motion to dismiss the plaintiffs' first amended complaint (docket entry 29). The court did not deny Saxon's motion to dismiss the plaintiffs' first amended complaint and concluded that it would henceforth consider the motion to dismiss to be directed against the plaintiffs' second amended complaint (docket entry 29).

On March 28, 2016, the plaintiffs filed their second amended complaint (docket entry 30). On April 4, 2016, Ocwen and U.S. Bank filed a motion to dismiss the second amended complaint (docket entry 31), and on April 8, 2016, Saxon filed its sur-reply ("Saxon's Sur-Reply") to the second amended complaint (docket entry 33). The motions are now ripe for consideration.

## II.  ANALYSIS

### A.  Legal Standard

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic*

*Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).  "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.  The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id.*  The plausibility principle does not convert the Rule 8(a)(2) notice

pleading to a "probability requirement," but "a sheer possibility that a defendant has

acted unlawfully" will not defeat a motion to dismiss.  *Id.* at 678.  The plaintiffs must

"plead[ ] factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."  *Id.*  "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to

relief.'"  *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The

court, drawing on its judicial experience and common sense, must undertake the

"context-specific task" of determining whether the plaintiffs' allegations "nudge" their

claims against the defendant "across the line from conceivable to plausible."  See *id.*

at 679, 683.

### B.  Application

#### 1.  *The defendants Ocwen's and U.S. Bank's Motion to Dismiss*

The plaintiffs allege that Ocwen and U.S. Bank violated § 392.301(a)(8) of the

Texas Debt Collection Act ("TDCA") by threatening to take an action prohibited by

law -- attempting to sell the plaintiffs' property at a foreclosure sale in violation of

federal law.  *See* Second Amended Complaint ¶ 52.  Ocwen and U.S. Bank contend

that the plaintiffs' TDCA claim should be dismissed for failure to state a claim under

Rule 12(b)(6) because the plaintiffs fail to identify how Ocwen and U.S. Bank used

threats, coercion, or attempts to coerce in connection with seeking to sell the property

at a foreclosure sale.  *See* Ocwen and U.S. Bank's Brief in Support of Motion to Dismiss Plaintiffs' Second Amended Complaint ("Ocwen's and U.S. Bank's Motion") ¶ 6 (docket entry 31).

In response, the plaintiffs argue that Ocwen is procedurally barred from bringing a 12(b)(6) motion to dismiss because Ocwen answered the plaintiffs' first amended complaint.  *See* Plaintiffs' Response and Brief in Opposition to Ocwen and U.S. Bank's Motion to Dismiss Plaintiffs' Second Amended Complaint ("Response to Ocwen and U.S. Bank") at 3-4 (docket entry 34).  The plaintiffs insist that since Ocwen has answered the first amended complaint, Ocwen cannot bring a Rule 12(b)(6) motion because Rule 12(b) states that a motion asserting any of the 12(b) defenses must be made before a responsive pleading.  Ocwen's and U.S. Bank's Motion at 3.  Further, Ocwen's Rule 12(b)(6) motion to dismiss cannot be construed as a Rule 12(c) motion because Saxon and U.S. Bank have yet to file answers to any of the plaintiffs' complaints, which means that the pleadings are not closed.  *See* Response to Ocwen and U.S. Bank at 4.

a.  Ocwen's Rule 12(b)(6) motion to dismiss is timely

Although Ocwen filed an answer to the first amended complaint before submitting the 12(b)(6) motion in question, Ocwen listed failure "to state a claim for which relief may be granted" as an affirmative defense in its answer to the plaintiffs' first amended complaint.  Answer to Plaintiffs' First Amended Complaint ¶ 63

(docket entry 16).  Several courts interpreting Rule 12(b)(6) have chosen to consider a post-answer motion to dismiss as properly before the court as long as the movant also raised the defense of failure to state a claim in its answer.  *Delhomme v. Caremark Rx Inc.*, 232 F.R.D. 573, 575-76 (N.D. Tex. 2005) (Buchmeyer, J.) (listing cases). Contrary to what the plaintiffs contend, "'courts do not mechanically or routinely deny any motion made after a responsive pleading as untimely.'"  *Id.* at 576 (quoting *Puckett v. United States*, 82 F. Supp. 2d 660, 663 (S.D. Tex. 1999), *affirmed sub. nom.*, *Puckett v. C.I.R.*, 213 F.3d 636 (5th Cir. 2000), *cert. denied*, 531 U.S. 1070 (2001)).  If a defendant has previously included failure to state a claim for which relief may be granted as an affirmative defense in its answer to the complaint, "thereby giving notice" of the defense, then courts will generally permit a Rule 12(b)(6) motion to be filed after the answer.  *Id.*  Therefore, Ocwen's Rule 12(b)(6) motion to dismiss is timely.

> b.  Ocwen's and U.S. Bank's motion to dismiss the
> plaintiffs' TDCA claim is granted

The plaintiffs claim that they submitted a complete loss mitigation application to Ocwen in March 2015, and under 12 C.F.R. § 1024.41(g) a servicer is prohibited from initiating foreclosure proceedings or foreclosing on the property until it gives the borrower the proper notice described in 12 C.F.R. § 1024.41(c)(1)(ii).  *See* Second Amended Complaint ¶¶ 25-31.  Since Ocwen allegedly did not provide the plaintiffs with the required notices, the plaintiffs maintain that Ocwen and U.S. Bank violated

TEX. FIN. CODE ANN. § 392.301(a)(8), which prohibits "threatening to take an action prohibited by law." *See* Second Amended Complaint ¶ 52.

Section 392.301(a)(8) prohibits a debt collector from, *inter alia*, "us[ing] threats, coercion, or attempts to coerce" by "threatening to take an action prohibited by law." TEX. FIN. CODE ANN. § 392.301(a)(8). Although the plaintiffs allege that Ocwen and U.S. Bank acted in violation of 12 C.F.R. § 1024.41, the plaintiffs do not assert that they used "threats, coercion, or attempts to coerce" that employed the practice of *threatening* to take an action prohibited by law. *Obazee v. The Bank of New York Mellon*, No. 3:15-CV-1082-D, 2015 WL 4602971, at *5 (N.D. Tex. July 31, 2015) (Fitzwater, J.); see also *Lo Voc v. JP Morgan Chase Bank, NA*, No. 3:12-CV-1342-M (BH), 2012 WL 6772061, at *4 (N.D. Tex. Dec. 5, 2012) (Ramirez, Mag. J.), *report and recommendation adopted*, 2013 WL 67128 (N.D. Tex. Jan. 7, 2013) (Lynn, J.) (holding that the plaintiffs failed to state a claim under § 392.301(a)(8) because they did not identify specific actions or statements made by the defendants that qualified as a threat). Accordingly, because the plaintiffs have failed to plausibly allege a violation of § 392.301(a)(8), Ocwen's and U.S. Bank's motion to dismiss the plaintiffs' TDCA claim is granted.

### c. The plaintiffs' alternative motion for leave to file a third amended complaint is denied

Though the titles of the plaintiffs' filings make no mention of a request for leave to amend, the plaintiffs -- at the tail-ends of their response and supporting brief

-- request that if the court grants Ocwen and U.S. Bank's motion to dismiss, the court grant the plaintiffs "leave to amend their complaint to cure the alleged pleading defects."  Response to Ocwen and U.S. Bank at 5.

While the Local Civil Rules of this court authorize a filed document to contain more than one pleading, motion, or other paper, any such document "must clearly identify each included pleading, motion, or other paper in its title."  Local Civil Rule 5.1(c).  The plaintiffs violated Local Civil Rule 5.1(c) by failing to identify in the title of their motion a request to file a third amended complaint.  Further, the plaintiffs failed to tender a proposed third amended complaint to be filed if leave were to be granted, as required by Local Civil Rule 15.1(a).  The plaintiffs have offered no suggestion as to what another pleading filed by them would accomplish.  Such deficiencies are sufficient grounds to deny the plaintiffs' motion for leave to file a third amended complaint.

"[L]eave to amend under Rule 15(a) is to be freely given."  *Schiller v. Physicians Resource Group Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).  However, "that generous standard is tempered by the necessary power of a district court to manage a case."  *Id.* In deciding whether to grant leave to amend, the court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of [the]

amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); see also *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003).  Here, although the defendants identified the same deficiencies in their motion to dismiss the plaintiffs' state court pleadings, the plaintiffs have repeatedly failed to cure the deficiencies in their first amended complaint and their second amended complaint.  Therefore, the court will not grant the plaintiffs leave to file a third amended complaint.

2.  *The defendant Saxon's motion to dismiss the*
*plaintiffs' second amended complaint*

Saxon moves to dismiss the plaintiffs' claims for breach of contract, promissory estoppel, and violations of TDCA §§ 392.304(a)(8) and 392.304(a)(19).

a.  Saxon's motion to dismiss the plaintiffs'
breach of contract claim is granted

Among several arguments, Saxon maintains that the formal repayment plan is not enforceable as a contract because the plaintiffs failed to execute and return the offer by the date stipulated therein.  *See* Saxon's Sur-Reply at 1-2.  The court agrees.

Saxon alleges that the formal repayment plan cannot be an enforceable contract because the plaintiffs failed to return the signed and executed contract document by the required date.  *Id.* at 1.  This argument treats the late return of the agreement as a failure to accept the contract within a fixed time period rather than as a material breach of the contract.  See *id.* at 1-2.  Instead of alleging a material breach, Saxon maintains that no contract exists and therefore Saxon cannot be held

to any obligations under the formal repayment plan.  See *id.*  Under Texas law, the following elements are required for the formation of a contract:  (1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding.  *Tyler v. Citi-Residential Lending Inc.*, 812 F. Supp. 2d 784, 787 (N.D. Tex. 2011) (Boyle, J.) (citing *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.--Tyler 2004, pet. den'd)).

Here, it is an undisputed fact that the plaintiffs failed to return the formal repayment plan document on January 3, 2011.  The formal repayment plan is unequivocally clear that the "failure to return the executed Agreement by [January 3, 2011] will result in this Agreement becoming null and void."  Exhibit B ¶ 10.  Where an offer prescribes the time and manner of acceptance, its terms must be complied with to create a valid contract.  *Williams v. Bank of America, N.A.*, No. CIV. A. H-13-648, 2014 WL 3511025, at *7 (S.D. Tex. July 14, 2014), *aff'd*, 602 Fed. Appx. 187 (5th Cir. 2015).  Since the plaintiffs did not return the signed and executed formal repayment plan by January 3, 2001, no contract was formed.  Timely performance of a contract term is not at issue here because no new contract was formed.

The plaintiffs allege that Saxon treated the contract as enforceable by accepting payments and communicating to the plaintiffs that the contract "was in place."  *See* Plaintiffs' Response and Brief in Opposition to Saxon's Motion to Dismiss the

Plaintiffs' First Amended Complaint ("Plaintiffs' Brief") ¶ 18 (docket entry 25).

However, Saxon's acceptance of increased payments does not indicate intent to be

bound by the formal repayment plan because the payments that Saxon accepted were

already required under the note and security instrument.  See *Pennington v. HSBC*

*Bank USA, N.A.*, 493 Fed. Appx. 548, 555 (5th Cir. 2012) (holding that a bank's

acceptance of payments already owed did not show an intention to be bound by an

unsigned contract), *cert. denied*, __ U.S. __, 133 S. Ct. 1272 (2013).

Additionally, the plaintiffs' claim that after the formal repayment plan had

been sent back to Saxon, Saxon communicated that the formal repayment plan "was

in place," Plaintiffs' Brief ¶ 18, but since a written contract was never formed by

January 3, 2011, Saxon's behavior can only supply factual support for an implied

contract.  However, an implied contract is unenforceable because "a loan agreement

in which the amount involved in the loan agreement exceeds $50,000 in value is not

enforceable unless the agreement is in writing and signed by the party to be bound."

TEX. BUS. & COM. CODE ANN. § 26.02(b).

Promissory estoppel is a narrow exception to the statute of frauds where a

party promised to sign an already written agreement that itself complies with the

statute of frauds.  *Gordon v. J.P. Morgan Chase Bank, N.A.*, 505 Fed. Appx. 361, 365

(5th Cir. 2013).  However, because the plaintiffs have failed to assert that Saxon

made a promise to sign a new written agreement -- based upon the alleged conduct

that created an implied contract -- that would satisfy the statute of frauds, the promissory estoppel doctrine does not save the plaintiffs' breach of contract claim.

Since the plaintiffs failed to execute and return the formal repayment plan by January 3, 2011, no contract was formed. Therefore, the plaintiffs have failed to show that an enforceable contract exists between themselves and Saxon. Saxon's motion to dismiss the plaintiffs' breach of contract claim is granted.

b. Saxon's motion to dismiss the plaintiffs'
promissory estoppel claim is denied

Saxon further argues that the plaintiffs' claims for promissory estoppel should be dismissed for failure to state a claim. The court disagrees. Under Texas law, although promissory estoppel is primarily a defensive theory, it is also available as a cause of action for a "promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise." *Gordon*, 505 Fed. Appx. at 365. The requisites of a promissory estoppel claim are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, (3) actual, substantial, and reasonable reliance by the promisee to his detriment, and (4) injustice that can be avoided only by enforcement of the promise. *Ellen v. F.H. Partners, LLC*, No. 03-09-00310-CV, 2010 WL 4909973, at *4 (Tex. App.--Austin Dec. 1, 2010) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005)). As when promissory estoppel is used as a defense, if the underlying oral promise is barred by the statute of frauds, the plaintiff

- 15 -

must show that the promisor promised to sign an existing written document that would satisfy the statute of frauds.  *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982).

Here, the plaintiffs have alleged that Saxon promised to sign the formal repayment plan.  Second Amended Complaint ¶ 44.  The plaintiffs state that:

> Saxon in fact did send Plaintiffs a Formal Repayment Plan Agreement with the terms of the Formal Repayment Plan, and Plaintiffs executed the Formal Repayment Plan Agreement and returned it to Saxon.  Mr. Fulton told Plaintiff Hoyt that Saxon would sign the agreement and would mail a copy of the fully signed agreement to the Plaintiffs.

Second Amended Complaint ¶ 44.  Although the plaintiffs do not make it clear whether Mr. Fulton, acting on behalf of Saxon, made the alleged promise before or after the plaintiffs were required to have returned the signed formal repayment plan, when all factual allegations are viewed in the light most favorable to the plaintiffs, it is reasonable to infer that Mr. Fulton made the promise to sign the written formal repayment plan on or before January 3, 2011.  Accepting that inference makes the plaintiffs' promissory estoppel claim plausible.

Saxon contends, however, that the plaintiffs cannot recover under a theory of promissory estoppel because the relationship between them was governed by the note and security instrument, which was a valid contract.  Saxon's Brief at 7.  Under Texas law, "[i]f an alleged promise is part of a valid contract, the promisee cannot disregard the contract and sue for reliance damages under the doctrine of promissory estoppel."

*Stable Energy, L.P. v. Kachina Oil & Gas, Inc.*, 52 S.W.3d 327, 336 (Tex. App.--Austin 2001, no pet.).

In response, the plaintiffs allege that an underlying deed of trust does not necessarily bar a promissory estoppel claim.  Plaintiffs' Response ¶ 30.  Promissory estoppel is not applicable to a promise covered by a valid contract between the parties; however, promissory estoppel will apply to a promise made outside of the contract.  *Williams v. Colonial Bank, N.A.*, 199 Fed. Appx. 399, 403 (5th Cir. 2006) (citing *Richter v. Wagner Oil Company*, 90 S.W.3d 890, 899 (Tex. App.--San Antonio 2002, no pet.)).  Here, although the note and security instrument remained in place, the plaintiffs have pled promissory estoppel to enforce Saxon's alleged promise "to bring the loan current upon [the plaintiffs] making the required payments under the repayment plan."  Second Amended Complaint ¶ 47.  The court concludes that this promise is outside of the note and security instrument.  Although Saxon alleges that it never promised the plaintiffs that the repayment plan would bring the loan current, the court must take all well-pleaded factual allegations in the complaint as true under a Rule 12(b)(6) analysis.  *Twombly*, 550 U.S. at 555-56.

Additionally, Saxon urges that the plaintiffs have failed to successfully plead that they detrimentally relied on the alleged promise to "bring the loan current."  Saxon's Sur-Reply at 3.  Specifically, Saxon contends that the increased payments that the plaintiffs paid were already required under the note and security instrument.

*Id.*  Further, Saxon insists that the plaintiffs' claim that they gave up certain bankruptcy protections cannot be used as an example of detrimental reliance because these rights rely on the existence of an enforceable contract and promissory estoppel presumes there is no contract.  *Id.*  Finally, Saxon submits that the plaintiffs cannot reasonably and detrimentally rely on Saxon's promise to "bring the loan current" by "thinking" that they gave up a right to certain bankruptcy protections.  *Id.* at 4.

However, Saxon misconstrues the requirements for promissory estoppel and fails to cite any authority in support of its argument that detrimental reliance cannot come from "thinking" that a right was given up.  Promissory estoppel allows a promisee who has acted to his detriment in reasonable reliance on an otherwise unenforceable promise to bring a cause of action to enforce the promise.  *Cherokee Communications, Inc. v. Skinny's Inc.*, 893 S.W.2d 313, 317 (Tex. App.--Eastland 1994, writ denied).  To have detrimentally relied on Saxon's promise, the plaintiffs must have shifted from a better position to a worse position based on the promise.  See *Vessels v. Anschutz Corp.*, 823 S.W.2d 762, 765 (Tex. App.--Texarkana 1992, writ denied).

Here, the plaintiffs claim to have foregone certain bankruptcy protections based on Saxon's promise to sign the formal repayment plan and bring the loan current.  Second Amended Complaint ¶ 45.  Bankruptcy protections are often beneficial to individuals in debt.  For example, when a bankruptcy petition is filed, an

automatic stay "prevents creditors from taking any collection actions against the debtor or the property of the debtor's estate for pre-petition debts." *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 354-55 (5th Cir. 2008).  Since the plaintiffs have pled that they refrained from seeking these protections, then it is reasonable to infer that they have shifted to a worse position by relying on Saxon's promise.  The plaintiffs' complaint therefore alleged a sufficiently clear promise, evidence of their own reliance, and an explanation of the injury that resulted. Saxon's motion to dismiss the plaintiffs' claim of promissory estoppel is denied.

### c.  Saxon's motion to dismiss the plaintiffs' claims for violations of the Texas Debt Collection Act is denied

Section 392.304 of the TDCA prohibits a debt collector from using "in debt collection" certain practices that involve "fraudulent, deceptive, or misleading representation[s]."  TEX. FIN. CODE § 392.304(a) (West).  The plaintiffs allege that Saxon violated § 392.304(a)(8) by "misrepresenting the character, extent, or amount of a consumer debt."  Second Amended Complaint ¶ 53.  The plaintiffs further allege that Saxon violated TEX. FIN. CODE § 392.304(a)(19) by "using any other false representation or deceptive means to collect a debt."  TEX. FIN. CODE § 392.304(a)(19) (West).  Second Amended Complaint ¶ 53.

### 1.  Section 392.304(a)(8)

Section 392.304(a)(8) prohibits mortgage services from making misrepresentations about a debt.  The plaintiffs must show that Saxon made a

misrepresentation that led them to be unaware (1) that they had a mortgage debt, (2) of the specific amount they owed, or (3) that they had defaulted. *Rucker v. Bank of America, N.A.*, 806 F.3d 828, 832 (5th Cir. 2015) (citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723 (5th Cir. 2013)).  The plaintiffs contend that Saxon violated § 392.304(a)(8) by failing to honor the repayment plan by bringing the loan current.  Second Amended Complaint ¶ 53.  Further, the plaintiffs claim that Saxon made an affirmative statement regarding their debt that was false or misleading by showing the total amount past due as $11,706.97 at a time when the plaintiffs allege that the loan was current.  Plaintiff's Brief ¶ 33.

Saxon contends that the plaintiffs failed to plead any facts to suggest that Saxon made an affirmative statement regarding the character, extent or amount of their debt that was false or misleading.  Saxon's Sur-Reply at 4.  The plaintiffs respond that they have alleged that Saxon sent an incorrect balance statement by misstating the amount of debt owed.  Under the TDCA, a collection notice or balance statement misstating the amount owed on a debt can be enough to plead a misleading assertion regarding the amount of that debt. *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 933 (N.D. Tex. 2014) (Lynn, J.) (citing *Baker v. Countrywide Home Loans, Inc.*, No. 3:08-CV-0916-B, 2009 WL 1810336, at *7 (N.D. Tex. June 24, 2009) (Boyle, J.), and *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010

WL 3565415, at *5 n. 6 (N.D. Tex. Sept. 7, 2010) (Fitzwater, Chief J.), *aff'd*, 453

F. Appx. (5th Cir. 2011), *cert. denied*, ___ U.S. ___, 133 S. Ct. 111 (2012)).

Here, the plaintiffs contend that they were led to be unaware of the specific

amount of debt that they owed because Saxon sent them a mortgage statement that

allegedly  misrepresented the plaintiffs' total amount of debt.  The plaintiffs have not

proven that Saxon listed the wrong dollar amount, but viewing all facts in the light

most favorable to the plaintiffs, the court concludes that the plaintiffs have

sufficiently pled a cause of action under § 392.304(a)(8).

## 2.  Section 392.304(a)(19)

Section 392.304(a) of the Texas Finance Code prohibits the use of "fraudulent,

deceptive, or misleading representation" by a debt collector including "(19) using any

other false representation or deceptive means to collect a debt or obtain information

concerning a consumer."  TEX. FIN. CODE § 392.304(a)(19).  "To violate the TDCA

using a misrepresentation, the debt collector must have made an affirmative

statement that was false or misleading."  *Verdin v. Federal National Mortgage Association*,

540 Fed. Appx. 253, 257 (5th Cir. 2013) (internal quotation marks omitted).

"Under Texas misrepresentation law, [a] promise to do or refrain from doing an act in

the future is not actionable unless 'the promise was made with no intention of

performing at the time it was made.'"  *Robinson v. Well Fargo Bank, N.A.*, 576 F. Appx.

358, 363 (5th Cir. 2014) (internal quotation omitted) (quoting *Formosa Plastics*

*Corporation USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)).  The plaintiffs allege that if Saxon did not sign the formal repayment plan as promised, and knew that the plaintiffs believed that the formal repayment plan was in effect, then Saxon violated § 392.304(a)(19) by representing that it would sign the plan and by inducing the plaintiffs to make increased payments and not declare bankruptcy all the while knowing that Saxon was not similarly bound by the plan. Second Amended Complaint ¶ 53.

Saxon argues that the plaintiffs' allegations should be considered communications in connection with negotiating a repayment plan and executing a legal document -- not debt collection activities.  Saxon's Sur-Reply at 5.  Section 392.304(a)(19) deals with debt collection activities specifically, and "[c]ommunications in connection with renegotiation of a loan do not concern the collection of a debt, but, instead, relate to its modification and thus they do not state a claim under Section 392.304(a)(19)." *Fields v. JP Morgan Chase Bank, N.A.*, No. 15-10034, __ Fed. Appx. __, 2016 WL 197191, at *3 (5th Cir. Jan. 15, 2016) (quoting *Thompson v. Bank of America National Association*, 783 F.3d 1022, 1026 (5th Cir. 2015)).  The plaintiffs respond by insisting that "the agreement was not to eventually modify the loan . . . but was instead a plan to allow the [p]laintiffs to continue to pay on the mortgage debt and pay off their arrearage."  Plaintiffs' Brief ¶ 35.  Here, the plaintiffs plead that the alleged promise made by Saxon was to induce the plaintiffs to

make increased payments.  If Saxon induced the plaintiffs to increase their payments while knowing that the formal repayment plan would not be valid, then it is plausible that Saxon used deceptive means to collect a debt.  The court concludes that Saxon's motion to dismiss should be denied because the plaintiffs have successfully stated a claim for a violation of § 392.304(a)(19).

### III.  CONCLUSION

For the reasons stated above, Ocwen's and U.S. Bank's motion to dismiss the plaintiffs' TDCA claims against them is **GRANTED** and Saxon's motion to dismiss the plaintiffs' second amended complaint is **GRANTED** in part and **DENIED** in part.

**SO ORDERED**.

July 15, 2016.

_A. Joe Fish_____
**A. JOE FISH**
**Senior United States District Judge**

- 23 -